VILLAGE OF OTTAWA HILLS, APPELLEE, *v.* JOELSON ET AL.,
APPELLANTS.

[Cite as Ottawa Hills v. Joelson (1975),
45 Ohio App. 2d 176.]

(No. 7851—Decided April 4, 1975.)

*Mr. Philip R. Joelson*, for appellants.
*Mr. Robert Dorrell*, for appellee.

POTTER, J.   Defendants, the appellants, residents of
the village of Ottawa Hills, Ohio, filed a tax return for the
year 1972, indicating that no income tax was due.   Ottawa
Hills assessed taxable income due thereon in the sum of
$500.87, which defendants refused to pay.   This action was
brought by Ottawa Hills to collect the tax due the village for
the year 1972.   Since the facts were not in dispute, both
the plaintiff and the defendants filed motions for summary
judgment.   The trial court granted the plaintiff's motion
for summary judgment and entered final judgment for the
plaintiff in the amount of $500.87.

The defendants' contention is that Ottawa Hills is pre-
cluded from assessing an income tax inasmuch as the state
of Ohio has pre-empted the field by the passage of R. C.

5747.01 et seq., effective January 1, 1972. Defendants also contend that income tax assessed by the village violates the "home rule" provision of the Ohio Constitution and is a form of double taxation.

The trial court upheld the validity of the income tax ordinance for the following reasons:

"1. The doctrine of implied pre-emption does not apply as the General Assembly has clearly stated its intent that the State income tax does not prevent a municipal corporation from levying a tax on income.

"2. The Ohio Constitution does not prohibit the General Assembly's right to share the income tax field with municipalities so no pre-emption of constitutional origin exists.

"3. That double taxation, if it exists, is a policy decision by the General Assembly, whose members are elected by the people of the State of Ohio and not a subject for judicial interference."

To this holding by the trial court, the defendants assert the following assignments of error:

"1. The Court below erred in not finding, as a matter of law, that Ohio Revised Code Sec. 5747.01 et seq. preempted the Village of Ottawa Hills income tax because the State of Ohio, at that time, entered the field of taxation on incomes.

"2. The Court below erred in not finding, as a matter of law, a constitutional pre-emption of the Village of Ottawa Hills income tax by virtue of Article XII, Sections 8 and 9 of the Constitution of the State of Ohio, upon enactment of Ohio Revised Code Sec. 5747.01 et seq.

"3. The Court below erred in not finding, as a matter of law, that the Village of Ottawa Hills income tax violated Article XVIII, Section 3 of the Constitution of the State of Ohio ('home rule' provision) upon enactment of the Ohio Revised Code Sec. 5747.01 et seq.

"4. The Court below erred in not finding, as a matter of law, that continued implementation of the Village of Ottawa Hills income tax after passage of Ohio Revised Code Sec. 5747.01 et seq. was double taxation within the

definition thereof as set forth by the Ohio Supreme Court in *East Ohio Gas Co.* v. *City of Akron,* 7 OS (2d) 73 (1966), and thereby, was invalid.''

In summary, defendants' argument is that the passage of the state income tax has triggered a state constitutional pre-emption of all income tax authority and that all municipal income taxes are now invalid. Defendants' ''home rule'' argument is essentially a part of their pre-emption argument. Defendants also assert the argument of ''double taxation.''

The following pertinent provisions of the Ohio Constitution are relevant to a discussion of the assignments of error.

Section 3, Article XVIII (Powers):

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

Section 13, Article XVIII (Taxation, debts, reports and accounts):

''Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.''

Section 6, Article XIII (Organization of cities, etc.):

''The general assembly shall provide for the organization of cities, and incorporated villages, by general laws; and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.''

Section 8, Article XII (Taxation of incomes):

''Laws may be passed providing for the taxation of incomes, and such taxation may be either uniform or graduated, and may be applied to such incomes as may be designated by law; but a part of each annual income *as provided*

*by law* may be exempt from such taxation." (Emphasized portion amended, effective Nov. 6, 1973; SJR No. 9.)

Section 9, Article XII (Apportionment of inheritance and income taxes):

"Not less than fifty per centum of the income and inheritance taxes that may be collected by the state shall be returned to the county, school district, city, village, or township in which said income or inheritance tax originates, or to any of the same, as may be provided by law."

R. C. 5747.02 is of particular importance and the pertinent portion thereof follows:

"For the purpose of providing revenue for the support of schools and local government functions, to provide relief to property taxpayers, to provide revenue for the general revenue fund, and to meet the expenses of administering the tax levied by this chapter, there is hereby levied on every individual residing in or earning or receiving income in this state an annual tax measured by adjusting gross income less an exemption of five hundred dollars each for the taxpayer, his spouse, and each dependent up to a maximum of three thousand dollars on each separate income tax return required by section 5747.08 of the Revised Code. The tax imposed by this section on the balance thus obtained is hereby levied as follows: * * *

"*The levy of this tax on income does not prevent a municipal corporation from levying a tax on income.*" (Emphasis added.)

Section 3, Article XVIII of the Constitution of Ohio provides that municipalities have the power of local self-government, and *State, ex rel. Zielonka,* v. *Carrel* (1919), 99 Ohio St. 220, is authority that these powers necessarily include the power of taxation. This same case also asked the question presented to the trial court and now to this court: "* * * whether both state and municipality may occupy the same field of taxation at the same time * * *." (Page 228.)

The implied answer to that question in the *Carrel* case was that they could not and that implication necessarily rested on the language of Section 9, Article XII. C. Emory

Glander, in an excellent article in 21 Ohio St. L. J. 343, entitled "Analysis and Critique of State Pre-emption of Municipal Excise and Income Taxes Under Ohio Home Rule," reviews a "series of frustrating decisions," since the *Carrel* decision. The case of *Angell* v. *City of Toledo* (1950), 153 Ohio St. 179, Mr. Glander states, marked the turning point in this series. The *Angell* case involved the constitutionality of the income tax of the city of Toledo. In commenting on the *Carrel* case, the Supreme Court made the following observation, at pages 180, 181:

"The income tax question in Ohio has become confused by two causes, first, in the case of *State, ex rel. Zielonka, City Solicitor,* v. *Carrel, Aud.,* 99 Ohio St., 220, 228, 124 N. E., 134, the following obiter dictum is found:

" 'It may be said in this connection that it is clearly to be implied from the Constitution that municipalities are without power to levy an income or inheritance tax.'

"No inheritance or income tax was before the court in that case nor are such subjects mentioned in the syllabus of the case."

Paragraphs one and two of the syllabus of the *Angell* case are quoted below:

"1. Ohio municipalities have the power to levy and collect income taxes in the absence of the pre-emption by the General Assembly of the field of income taxation and subject to the power of the General Assembly to limit the power of municipalities to levy taxes under Section 13 of Article XVIII or Section 6 of Article XIII of the Ohio Constitution.

"2. The state has not pre-empted the field of income taxation authorized by Sections 8 and 9 of Article XII of the Constitution, and the General Assembly has not, under authority of Section 13 of Article XVIII or Section 6 of Article XIII of the Constitution, passed any law limiting the power of municipal corporations to levy and collect income taxes."

Both the Glander article and the *Angell* case obviously preceded the passage of the state income tax, but both anticipated the passage. See *Angell, supra* at 183, 184:

"Therefore, until the General Assembly of Ohio has pre-empted the income tax field, a municipality, subject to such limitation as may be imposed by the General Assembly under Section 13 of Article XVIII or Section 6 of Article XIII of the Ohio Constitution, may levy and collect an income tax. So that today, in absence of legislation by the General Assembly providing for a uniform or graduated income tax and the required apportionment thereof and subject to Section 13 of Article XVIII and Section 6 of Article XIII limiting the power of taxation, Ohio municipalities have the power to levy and collect an income tax."

The Glander article, at page 362, suggested permissive legislation similar to R. C. 5747.02 in the case of the passage of a state income tax. See also Desmond & Sefcovic, "Municipal Debt and Tax Limitations," 33 Ohio St. L. J. 606 at page 619.

The *Angell* case did not clearly resolve the problem of pre-emption in the event of passage of a state income tax, and the question relative to pre-emption where there is tax sharing (see Section 9, Article XII) as in the case of *Firestone* v. *City of Cambridge* (1925), 113 Ohio St. 57, is directly before this court.

Defendants argue that there is, under Section 9, Article XII, a constitutional pre-emption, and R. C. 5747.02, the General Assembly's disclaimer of pre-emption, is of no avail.

Therefore, Section 9, Article XII, must be carefully construed. It is to be noted that there are no words expressly limiting the right of a municipality to levy an income tax; rather, Section 9 is a limitation on the state as to the allocation of the revenue derived. While at least fifty per centum of the state tax collected must be returned to local government units, of which the city or village is but one, there is no constitutional expression of interdiction.

While the General Assembly could perhaps have pre-empted the field either by implication or expressed interdiction (cf. *Ohio Finance Co.* v. *City of Toledo* (1955), 163 Ohio St. 81), nevertheless, it specifically and pointedly dis-

claimed any intention to do so by the enactment of R. C. 5747.02.

We, therefore, hold that in Section 9, Article XII, there is no direction or intent to pre-empt the income tax field, but it is a reference only to the distribution of income tax revenue.

As to the question of "double taxation," the Supreme Court of Ohio has recently expressed its aversion for such taxation. See *East Ohio Gas Co.* v. *City of Akron* (1966), 7 Ohio St. 2d 73 at 77, as follows:

"This court's establishment of the doctrine of pre-emption in Ohio appears to have come about because of the court's antipathy to 'double taxation.'"

While the above may challenge the assertion that double taxation is primarily a policy consideration, see Glander, *supra*, at 358; 51 Ohio Jurisprudence 2d 103, Taxation, Section 80; 71 American Jurisprudence 2d 362, State and Local Taxation, Section 31, nevertheless, the General Assembly has clearly spoken that separate taxing authorities— to wit, the municipality and the state—may both tax* and, as we have stated above, there is no constitutional restriction on the state and municipalities from occupying the same field of taxation. See Glander, *supra* at 360.

For the foregoing reasons, defendants' assignments of error are not well taken and the judgment of the Court of Common Pleas of Lucas County is affirmed.

*Judgment affirmed.*

BROWN, P. J., and WILEY, J., concur.

---

*See also *Thompson* v. *City of Cincinnati* (1965), 2 Ohio St. 2d 292, paragraph four of the syllabus, as follows:

"A resident of one municipal corporation who receives wages as a result of work and labor performed within another municipal corporation may be lawfully taxed on such wages by both municipal corporations. Sections 3 and 7, Article XVIII of the Ohio Constitution."